UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TERNIUM INTERNATIONAL USA CORP., | ) | |
| Plaintiff/Counter Defendant, | ) | CIVIL ACTION NO. |
| VS. | ) | 3:08-CV-0816-G |
| CONSOLIDATED SYSTEMS, INC., | ) | **ECF** |
| Defendant/Counter Claimant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the motion of the plaintiff, Ternium International U.S.A. Corporation ("Ternium" or "the plaintiff"), to dismiss the counterclaims asserted against it by the defendant, Consolidated Systems, Inc. ("CSI"). For the reasons discussed below, the motion to dismiss is granted.

## I. BACKGROUND

The plaintiff is a steel trader. Ternium International U.S.A. Corporation's Response to Consolidated Systems, Inc.'s Motion to Transfer Venue ("Response to Motion to Transfer Venue") at 2. This means that Ternium buys steel from

producers, and then sells to a purchaser. *Id.* CSI is in the business of painting steel. Consolidated Systems, Inc. Brief in Support of Motion to Transfer Venue ("Motion to Transfer Venue") ¶ 2. In late 2006, CSI ordered steel from Ternium. Response to Motion to Transfer Venue at 2. CSI sent purchase orders from its offices in South Carolina to Ternium's employee in Arizona. Defendant's Reply to Ternium International U.S.A. Corporation's Response to Consolidated Systems, Inc.'s Motion to Transfer Venue at 6. These purchase orders were addressed to Ternium at its office in Houston, Texas. Original Complaint, Exhibit A. Ternium then sent confirmations from its Houston, Texas office back to CSI. Response to Motion to Transfer Venue at 2. Ternium ordered the steel in Texas from a Mexican supplier and had it shipped to CSI in Columbia, South Carolina. *Id.*

When CSI received the steel, it discovered it was unable to paint the steel "without undertaking a number of actions that go beyond its normal business processes." Motion to Transfer Venue ¶ 2. CSI argues that the steel did not meet its specifications, and that the receipt of the non-conforming steel caused CSI to suffer damages. *Id.* CSI paid $471,365.01 for the steel it received, but refused to pay the balance of Ternium's invoices: $1,216,113.17. Response to Motion to Transfer Venue at 3. Ternium filed suit in this court, seeking to recover the balance. CSI then filed counterclaims, asserting breach of contract, breach of contract accompanied by fraudulent act, constructive fraud, and violation of the South Carolina Unfair Trade

Practices Act ("SCUTPA"). Consolidated Systems, Inc.'s Counterclaim Against Ternium International U.S.A. Corp. ("Counterclaim") at 6-10. Ternium now moves to dismiss three of these counterclaims.

## II. ANALYSIS

### A. The Rule 12(b)(6) Standard

"To survive a Rule 12(b)(6) motion, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007)), *cert. denied*, __ U.S. __, 128 S.Ct. 1230 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65 (citations, quotations marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 127 S.Ct. at 1965). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (internal quotation marks omitted) (quoting *Martin K. Eby Construction Company v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004)).

B. Choice of Law

Ternium argues that Texas law, and not South Carolina law, should apply to this case. Further, it asserts that three of the four counterclaims -- breach of contract accompanied by fraudulent act, constructive fraud, and a violation of SCUTPA -- do not exist under Texas law. Ternium International U.S.A. Corporation's Motion to Dismiss Consolidated Systems, Inc.'s Counterclaims ("Motion to Dismiss") at 7. Thus, it contends, if Texas law applies, these three causes of action must be dismissed.

A federal court sitting in diversity applies the choice of law rules of the state in which it sits. *Caton v. Leach Corporation*, 896 F.2d 939, 942 (5th Cir. 1990) (stating that "a federal court sitting in diversity [must apply] the choice of law rules of the forum"). In Texas, courts apply the "most significant relationship" test to determine which law applies. *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979) (holding that the most significant relationship test should determine which law applies in tort cases); *Duncan v. Cessna Aircraft Company*, 665 S.W.2d 414, 421 (Tex. 1984) ("[I]n all choice of law cases, except those contract cases in which the parties have agreed to a valid choice of law clause, the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue.").

According to the most significant relationship test, "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the

state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." *Gutierrez*, 583 S.W.2d at 319 (quoting Restatement (Second) of Conflicts § 145). There are four "contacts" which are relevant to determining which state has the most significant relationship with the occurrence and the parties. Those contacts are: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered." *Id.* Ternium argues that three of these four contacts weigh in favor of Texas, and that Texas law should therefore apply. Motion to Dismiss at 4-5.

1. *The First Contact: Where the Injury Occurred*

The parties both agree that the injury occurred in South Carolina. As Ternium acknowledges, CSI pleads that it discovered the alleged non-conformity of the steel in South Carolina and acted to mitigate the alleged damages in South Carolina. *Id.* at 5 n.9. Thus, this contact weighs in favor of South Carolina law.

2. *The Second Contact: Where the Injury-Causing Conduct Occurred*

Ternium argues that the conduct causing the injury took place in Texas. *Id.* at 4. Specifically, it asserts that CSI addressed its purchase orders to Ternium's place of business in Houston, and that "Ternium confirmed the order from and orchestrated the fulfillment of the order from Texas." *Id.* at 4-5. CSI, on the other hand, argues

that Ternium was doing business in Arizona, not Texas, during its dealings with CSI. Defendant Consolidated Systems, Inc.'s Response to Plaintiff's Motion to Dismiss Counterclaims ("Response to Motion to Dismiss") at 6. Further, it asserts that, even if Ternium did place, confirm, and fulfill the orders from Texas, CSI also prepared the purchase orders and received confirmation in South Carolina. *Id*. Finally, it asserts that Ternium is asserting the outdated theory of *lex loci contractus*, which Texas has denounced. *Id*. at 7.

First, the court notes that the fact that CSI prepared the purchase orders and received confirmation in South Carolina does not carry the same weight as the fact that Ternium confirmed and fulfilled the orders from Texas. The second contact focuses on where the injury causing conduct occurred. Here, it was clearly not the preparing of the purchase orders, or receiving the confirmation of the purchase orders that caused the harm. The harm arose out of Ternium allegedly fulfilling the order incorrectly. That fulfillment took place in Houston, Texas, where Ternium maintains its principal place of business. Motion to Dismiss at 5. Further, although CSI argues that it corresponded with an Edgar Fernandez ("Fernandez") at an Arizona address, it does not allege that Fernandez fulfilled the order. Response to Motion to Dismiss at 7. It was the fulfillment of the order that caused the alleged injury to CSI.

Finally, CSI is incorrect in arguing that Ternium is relying on the theory of *lex loci contractus*, which Texas has denounced. *Lex loci contractus* "required the application

of the law of the place where the contract was made." *Bergman v. Bergman*, 888 S.W.2d 580, 583 (Tex. App.--El Paso 1994, no writ). This theory no longer dictates what law applies. *Id*. Nevertheless, the place where the injury causing conduct occurred is still a contact for the court to consider in deciding what law applies. *Gutierrez*, 583 S.W.2d at 319. Thus, the court finds that the second contact weighs in favor of applying Texas law.

3. *The Third Contact: Residence, Place of Incorporation, Place of Business*

Ternium argues that this contact weighs in favor of Texas law because both parties have operations in Texas. Motion to Dismiss at 5. Ternium argues it has its principal, and only, place of business in Texas. *Id.* CSI is incorporated in and has its principal place of business in South Carolina. *Id.* However, it does operate a facility in Texas, which has no connection to this lawsuit. *Id.* Ternium argues that this one facility is not enough to tip the scales in favor of Texas law. Response to Motion to Dismiss at 8.

The court agrees that CSI's facility in Texas, which has no connection with this case, does not tip the scale in favor of Texas law. Taking this Texas facility out of the analysis, the court is faced with the following facts: Ternium is incorporated in Delaware but has its principal place of business in Texas; CSI, on the other hand, is incorporated in and has its principal place of business in South Carolina. Response to Motion to Dismiss at 8. Given that CSI is both incorporated in and has its principal

place of business in South Carolina, the court finds this factor tips slightly in favor of South Carolina law.

4. *The Fourth Contact: The Center of the Parties' Relationship*

Ternium argues that the parties' relationship centered around Texas, the place where Ternium confirmed and fulfilled the order. CSI, however, argues that the relationship centered around South Carolina, since "Ternium's performance of contractual duties were attempted and breached in South Carolina." Response to Motion to Dismiss at 9. Texas courts have looked to the Restatement (Second) of Conflict of Laws ("the Restatement") to flesh out this factor. In *BDO Seidman, LLP v. Bracewell & Patterson, LLP*, 2003 WL 124829, *3 (Tex. App.--Dallas January 16, 2003, pet. denied), the court quoted the following example from the Restatement:

> A lends his car to B in state X. A and B are both domiciled in X. B drives the car into state Y where he negligently runs over C. C recovers damages from A. A now sues B for indemnity in state Z. The Z court, in the absence of strong countervailing considerations, should apply X local law to determine A's right to indemnity.

Following this example, the court in *BDO Seidman* ruled that the parties' relationship centered around Texas because an audit letter, which the plaintiff relied on, was prepared in Texas. *Id.* at *4. The fact that the plaintiff received the letter in another state was not enough to persuade the court that the relationship centered around that other state. *Id.* In other words, the services the plaintiff asked the defendant to perform were carried out in Texas, and, as a result, the court found that

the relationship centered around Texas. *Id.* Here, CSI contacted Ternium, located in Houston, Texas, and placed the order there. More importantly, Ternium fulfilled the order in Texas. Just as in *BDO Seidman*, the services the plaintiff asked the defendant to perform were carried out in Texas. Under *BDO Seidman*, that fact is enough for a Texas court to conclude that the center of the relationship is in Texas. *Id.* Although the final product was shipped to South Carolina, Texas law holds that this fact is not controlling. See *id.*

Further, this situation is analogous to the Restatement's example. Just as the relationship between A and B began in state X, the relationship here between Ternium and CSI began in Texas. Although Ternium and CSI are not domiciled in the same state, as A and B are, the relationship between the two parties began when CSI contacted Ternium and asked it to fulfill an order using its Texas facility. Taking all these factors into account, the court finds that, under Texas law, the center of the relationship between CSI and Ternium is Texas.

5. *Analysis of The Four Factors*

Having applied the four factors, two weigh in favor of applying Texas law, and two weigh in favor of South Carolina law. The third factor, however, weighs only slightly in favor of South Carolina. In addition, in cases involving misrepresentation, such as this one, the Restatement states that the place of injury is of less significance. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 cmt. f (1971). The comment

states that in such cases, "[t]he effect of the loss, which is pecuniary in its nature, will normally be felt most severely at the plaintiff's headquarters or principal place of business." Nevertheless, "this place may have only a slight relationship to the defendant's activities." Here, the counterclaims for breach of contract by fraudulent act, constructive fraud, and violation of SCUTPA all center around an alleged misrepresentation by Ternium. Thus, under the Restatement, the place where the injury occurred is of less significance. Although the effects of the misrepresentation were felt in South Carolina, South Carolina does not bear a strong relationship to the wrongful activities that are at issue in these counterclaims. It is the defendants' allegedly wrongful behavior that is at issue, all of which took place in Texas.

Further, the Restatement states that "when the primary purpose of the tort rule involved is to deter or punish misconduct, then the place where the conduct occurred has peculiar significance." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 cmt. e (1971). The three claims Ternium seeks to dismiss are breach of contract by fraudulent act, constructive fraud, and a violation of SCUTPA. South Carolina case law suggests that SCUTPA claims are designed to deter and punish. *City of Charleston v. Hotels.com, LP*, 520 F. Supp. 2d 757, 776 (D.S.C. 2007) (stating that SCUTPA was meant to deter and punish misrepresentations made to online consumers of hotel reservations); see also *Wright v. Craft*, 640 S.E.2d 486, 498 (S.C. App. 2006) (stating that a plaintiff can recover treble damages for a willful or knowing violation of

SCUTPA). A South Carolina court has also stated that the "real benefit of a cause of action for breach of contract accompanied by a fraudulent act is the attendant availability of punitive damages." *Osborn v. University Medical Associates of Medical University of South Carolina*, 278 F. Supp. 2d 720, 740 n.14 (D.S.C. 2003). Finally South Carolina cases have upheld the award of punitive damages on constructive fraud claims, suggesting that it is also designed to deter or punish. *Smith v. Strickland*, 442 S.E.2d 207, 210 (S.C. App. 1994); *Armstrong v. Collins*, 366 S.E.2d 368, 374, 382-83 (S.C. App. 2005).

Thus, the three fraud-centered claims Ternium seeks to dismiss are designed to deter or punish the defendants. The Restatement directs the court to weigh this fact in favor of the law of the forum where the injury causing conduct occurred. In light of this consideration, and in light of the fact that the second factor weighs only slightly in favor of South Carolina law, the court concludes that Texas law should apply.

6. *Texas Law Does Not Support the Counterclaims*

The only remaining question for the court is whether the three causes of action CSI asserts exist under Texas law. The claim for a violation of SCUTPA does not exist under Texas law. SCUTPA is a South Carolina statute that does not exist in Texas. Ternium's motion to dismiss CSI's counterclaim under SCUTPA is therefore granted. Similarly, Texas common law does not include a cause of action for breach

of contract accompanied by fraudulent act. The court has been unable to find any Texas case embracing such a cause of action. The court grants Ternium's motion to dismiss this claim, as well.

Texas does recognize a claim for constructive fraud. *Jones v. Texas Department of Protective and Regulatory Services*, 85 S.W.3d 483, 491 (Tex. App.--Austin 2002, pet. denied). However, Texas law defines constructive fraud as "the breach of a legal or equitable duty which the law declares fraudulent because it violates a fiduciary relationship." *In re Estate of Herring*, 970 S.W.2d 583, 586 n.3 (Tex. App.--Corpus Christi 1998, no pet.) (citing *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964)). CSI has not pleaded that Ternium owed CSI a fiduciary duty. As a result, CSI has not pleaded facts that will entitle it to recover under the Texas version of constructive fraud. The South Carolina version of that tort is irrelevant, as the court has decided that Texas law applies. Ternium's motion to dismiss CSI's counterclaim for constructive fraud is therefore granted.

## III. CONCLUSION

For the reasons discussed above, CSI's counterclaims for constructive fraud, breach of contract accompanied by fraudulent act, and a violation of SCUTPA are **DISMISSED**.

**SO ORDERED**.

March 25, 2009.

**A. JOE FISH**
**Senior United States District Judge**